**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THOMAS A. D'AMBOLA, | : | CIVIL ACTION NO. 16-2735 (MLC) |
| | : | |
| | : | **MEMORANDUM OPINION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LAKEWOOD BOARD OF | : | |
| EDUCATION, et al. | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**COOPER, District Judge**

Plaintiff Thomas D'Ambola brought this suit alleging federal and state causes of action arising from his employment as Business Administrator for the Lakewood Board of Education, the non-renewal of his contract for that position, and his ultimate termination. (Dkt. 1.)[1]  Plaintiff alleges claims against the Lakewood Board of Education, Michael Azzara, and David Shafter.

Defendants Azzara and Shafter filed a motion to dismiss.  (Dkt. 11.)  Defendant Board of Education filed a partial motion to dismiss.  (Dkt. 13.)  Plaintiff filed a brief opposing both motions.  (Dkt. 16.)  Defendant Board of Education (dkt. 19) and defendants Azzara and Shafter (dkt. 20) filed reply briefs.

---

[1] The Court will cite to the documents filed on the Electronic Case Filing System ("ECF") by referring to the docket entry numbers as "dkt."  Pincites reference ECF pagination.

We have considered all these filings, and will resolve the matter without oral argument.  See L.Civ.R. 78.1(b).

For the following reasons, we will deny both the partial motion to dismiss and the motion to dismiss.

## BACKGROUND

Plaintiff, Thomas A. D'Ambola, a New Jersey resident, previously worked for Defendant Lakewood Board of Education ("Board," "School Board," or "Board of Education").  (Dkt. 1 at 2.)  Defendant Board is a public entity under New Jersey law.  (Id.)  Defendant Michael Azzara served as the State Monitor for the Board of Education.  (Id.)  Defendant David Shafter served as a fiscal consultant and adviser to Defendant Azzara, and currently serves as the Lead State Monitor for the Board of Education. (Id.)

Plaintiff makes the following allegations and representations in his Complaint, which we accept as true for the purposes of resolving these motions to dismiss.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Plaintiff has worked as a school business administrator for approximately twenty years.  (Dkt. 1 at 5.)  Defendant Board of Education hired Plaintiff as the Board of Education's School Business Administrator/Board Secretary on December 21, 2012, for a term through June 30, 2013.  (Id. at 4.)  Subsequently, Plaintiff, upon the recommendation of the Board Superintendent, Laura Winters, was reappointed twice more. (Id.)  Each term involved a one-year contract.  (Id.)  For the 2013–14 school year the contract covered the period between July 1, 2013 and June 30, 2014, and for the 2014–15 school year, the contract

covered the period between July 1, 2014 and June 30, 2015.  (Id. at 5.)  Plaintiff did not have employee disciplinary problems while working for the Board.  (Id.)

Plaintiff's job responsibilities included serving as Secretary to the Board of Education. (Id. at 6.)  As Board Secretary, Plaintiff had to attend all Board meetings to take minutes and record roll call and votes.  (Id. at 6.)  Prior to each Board meeting, Plaintiff would assist the Superintendent's Office in preparing the agenda.  (Id. at 7.)  In this capacity, Plaintiff also attended Finance, Transportation, and Buildings and Ground Committee Meetings, as well as the annual Public Budget Hearing.  (Id.)

Plaintiff objected to practices by the Defendant Board regarding fiscal management that he believed violated various New Jersey laws.  (Id. at 7.)  Because of the deficit in the Board's 2013–14 school-year budget, the Commissioner of the New Jersey Department of Education on April 25, 2014 appointed Defendant Azzara to serve as the State Monitor in charge of overseeing the Lakewood School District.  (Id. at 11.)

At the time of Plaintiff's employment, Defendant School Board provided a service known as courtesy busing.  (Id. at 9.)  New Jersey school districts are not required to provide transportation, such as school buses, to elementary school children who live within two miles of their school or to high school students who live within two and one-half miles from their school.  (Id.)  Courtesy busing is the practice of providing a transportation service to these children when the school district is otherwise not obligated to.  (Id.)  The service is provided to private school students.  (Id.)  Because courtesy busing is not required, it receives less budgetary priority than other education items and programs.  (Id.)

Plaintiff met with Superintendent Winters on multiple occasions in 2013 and 2014 to plan the 2014–15 budget.  (Id. at 8.)  Both agreed that the courtesy busing program, if continued, would lead to a deficit in the budget.  (Id.)  State law places a cap on budgets, and Plaintiff believed that including the courtesy busing would unlawfully cause the Board of Education to propose a budget that exceeded that cap.  (Id. at 10.)

In March 2014, Plaintiff and Superintendent Winters proposed removing the courtesy busing from the budget, and submitting a question on the next general election ballot for the Lakewood voters to either approve or reject continuing the courtesy busing service.  (Id. at 10.)  Plaintiff believed this would have allowed the Defendant Board to present a balanced budget, as required by law, and then permit the voters of Lakewood to determine whether they wanted to finance the courtesy busing via an increase in municipal taxes.  (Id.)

For the 2014–15 school-year budget, Defendant Azzara declared that he "found" five million dollars to use in the budget, and the budget would thus be able to include courtesy busing.  (Id. at 11.)  Plaintiff alleges that this was unlawful and was done by Defendant Azzara to "provide a 'gift' to a powerful political group in the form of courtesy busing for the non-public students in Lakewood."  (Id. at 12.)

The following year, Plaintiff expressed concern to Defendant Azzara and Superintendent Winters to his certifying of the 2015–16 school-year budget, which was also projected to include a deficit.  (Id. at 13.)  Superintendent Winters shared Plaintiff's budget concerns with the Defendant Board of Education.  (Id.)  Defendant Azzara told Plaintiff that pending revenues would stabilize the budget and instructed Plaintiff to certify the budget. (Id.)  Plaintiff objected to this, believing it would be a "fraud on the system and on the

taxpayers." (Id.)  Defendant Azzara suggested removing textbook purchases from the budget so that courtesy busing could be included. (Id. at 14.)  Plaintiff objected, but Defendant Azzara told Plaintiff that "If I don't do it, *they* will replace me with someone who will do it." (Id.)

During the finalization of the 2015–16 school-year budget, Defendant Azzara did not meet to discuss details of the budget with Plaintiff even though Plaintiff served as the business administrator. (Id. at 13)  According to Plaintiff, Defendants Azzara and Shafter excluded him from dialogue on the budget and finances. (Id. at 14.)  The preliminary budget was more than eight million dollars over the budget cap. (Id.)

Within two months of objecting to Defendant Azzara's proposal to remove textbook purchases from the school budget, Plaintiff's employment was terminated and he was not reappointed as Business Administrator despite having the recommendation of Superintendent Winters. (Id. at 15, 18–19.)  Plaintiff's last day was June 30, 2015. (Id. at 19.)

Plaintiff alleges that Defendants retaliated against him because he objected to the courtesy busing program, which he found to be unethical, unlawful, and not in the interest of the Lakewood public school students, and that ultimately Plaintiff was terminated and his contract was not reviewed, notwithstanding Superintendent Winter's recommendation. (Id. at 17.)

Plaintiff filed this federal suit alleging: that Defendants School Board, Azzara, and Shafter[2] violated the New Jersey Conscientious Employee Act ("CEPA") by terminating

---

[2] Plaintiff sued Defendants Azzara and Shafter in their official and personal capacities. (Dkt. 1 at 3–4.)

Plaintiff for voicing objection to the courtesy busing policy (Count One); and Defendants School Board, Azzara, and Shafter deprived Plaintiff of his First Amendment rights, in violation of 42 U.S.C. § 1983, by retaliating against Plaintiff (Count Two).[3]  (Dkt. 1 at 19–22.)

## DISCUSSION

Defendant Board of Education filed a partial motion to dismiss.[4]  (Dkt. 13.) Defendants Azzara and Shafter moved to dismiss both Count One and Count Two.  (Dkt. 11.) We address both motions in this opinion.  For the following reasons, we will deny both motions.

## I.        CEPA

### A.      Parties' Arguments

Defendants Azzara and Shafter argue that they took no action, and therefore, they cannot be held liable for the actions of the Defendant School Board.  (Dkt. 11-3 at 10–11.) Specifically, Defendants contend that they cannot be held liable under CEPA for decisions made by Defendant School Board that they did not participate in nor approve.  (Id. at 11.) Defendant Shafter also argues that Plaintiff has failed to specifically make any allegation

---

[3] Plaintiff also alleged breach of good faith and fair dealing (Count Three), tortious interference with a contractual relationship and prospective economic advantage against Defendants Azzara and Shafter (Count Four), and termination in violation of public policy (Count Five).  (Dkt. 1 at 23–25.)  After Defendants Azzara and Shafter (dkt. 11-3 at 11–16) and Defendant School Board (dkt. 13-1 at 1) moved to dismiss these three counts, Plaintiff agreed to withdraw the counts without prejudice.  (Dkt. 16 at 4.)

[4] Defendant School Board also referred to its motion as a motion for summary judgment to the extent it sought to terminate Counts Three and Five.  (Dkt. 13.)  As discussed, Plaintiff has dropped those claims, and we only address Defendant School Board's partial motion to dismiss.

against him that meets the pleading standards of Iqbal.  (Id. at 9.)  Defendant School Board

did not move to dismiss the CEPA claim against it.

Plaintiff argues that he has sufficiently stated a claim against both Defendant Azzara

and Defendant Shafter.  Plaintiff refutes Defendants' assertion that he merely raised failure to

act claims.  (Dkt. 16 at 23.)  He notes that both Defendants "engaged in actual participation of

the retaliatory treatment of and wrongful termination of [him]."  (Id.)  In support, Plaintiff

cites specific factual allegations made in the Complaint that he claims are sufficient to survive

a motion to dismiss for failure to state a claim.  (Id. at 24–25.)  He also points to specific

allegations he made against Defendant Shafter.  (Id. at 21– 22.)[5]

### B.    Analysis

We conclude that Plaintiff has sufficiently pleaded a claim under the New Jersey

Conscientious Employee Protection Act against both Defendant Azzara and Defendant

Shafter.  Therefore, the motion to dismiss (dkt. 11) is denied as to Count One.

The New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq.,

provides employees who act in the public interest by "blowing the whistle" on employers

engaged in illegal or harmful activity with broad protections from employer retaliation.

Spence-Parker v. Del. River & Bay Auth., 656 F. Supp. 2d 488, 503 (D.N.J. 2009); Feldman

---

[5] We note that in Plaintiff's brief, he has appended two emails between Defendant Azzara to another individual to further his argument that we should deny the motion to dismiss.  (Dkt. 16 at 24–25; dkt. 16-1 at 4–6.)  Plaintiff asserts that he did not obtain these emails until June 2016, after he had filed the Complaint.  (Id. at 1–2.)  Plaintiff, however, did not file an Amended Complaint, Fed. R. Civ. P. 15(a), to include these allegations.  Because they were not included in the Complaint or in an Amended Complaint, and the pending motions seek dismissal rather than summary judgment, we have not considered these emails in evaluating the motions to dismiss.  See Bruni v. City of Pittsburgh, 824 F.3d 353, 360 (3d Cir. 2016).  We conclude that Plaintiff has stated a plausible claim of relief without these emails.

v. Hunterdon Radiological Associates, 901 A.2d 322, 329 (N.J. 2006).  The social goal of the whistle-blowing statute is to encourage employees to come forth to report employer conduct and discourage employers from engaging in such conduct.  Zappasodi v. State, Dept. of Corrections, Riverfront State Prison, 761 A.2d 96, 100 (N.J. Super. Ct. App. Div. 2000).  We construe CEPA liberally.  Boyle v. Quest Diagnostics, Inc., 441 F. Supp. 2d 665, 670 (D.N.J. 2006).

To establish a claim under CEPA, a plaintiff must demonstrate "(1) his reasonable belief that his employer's conduct violated a law, rule, or regulation; (2) a whistle-blowing activity; (3) an adverse employment action; and (4) a causal connection between her whistle-blowing activity and the adverse employment action." Figueroa v. City of Camden, 580 F. Supp. 2d 390, 407 (D.N.J. 2008).  The first two elements relate to the employee and the second two focus on the employer's conduct.

Defendants Azzara and Shafter do not identify which element or elements of a CEPA claim that Plaintiff has failed to properly plead.  Without any legal support, Defendants Azzara and Shafter merely argue that "a defendant cannot be liable under CEPA for a decision he or she neither participated in nor approved."  (Dkt. 11-3 at 16.)  Nonetheless, we conclude that Plaintiff has sufficiently stated a claim under CEPA upon which relief can be granted and has alleged specific conduct by Defendants Azzara and Shafter.

An employee is protected by CEPA if the employee "[o]bjects to, or refuses to participate in any activity, policy or practice" provided the employee reasonably believes that the objected-to practice or policy

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care;

(2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3(c).]

We are satisfied that Plaintiff has met his burden under both employee-related CEPA elements.  First, we conclude that he has sufficiently pleaded his reasonable belief that the Board of Education's continued funding of courtesy busing while facing a budget deficit violated state education laws and regulations and was incompatible with the policies behind the public education system in New Jersey.  Plaintiff alleges that he believed that various New Jersey education laws and regulations were being violated, and he informed Defendants of his concerns.  (Dkt. 1 at 7–8, 9, 10, 15, 19.)  Specifically, Plaintiff claims that he explained to Defendants that courtesy busing could not be included in the school budget because the budget would exceed a 2% cap imposed by law.  (Id. at 10.)  Second, we find that Plaintiff has sufficiently pleaded that he engaged in protected whistle-blowing activities by refusing to certify a school budget as a Business Administrator that he believed would leave the budget in

violation of education law.  Plaintiff claims that he expressed his objections to Defendant Azzara and Superintendent Winters about certifying a budget that projected a deficit.  (Id. at 13.)  Plaintiff alleges that Defendant Azzara ordered him to certify the budget and include a caveat that revenues were pending, but Plaintiff did not believe such revenue would be obtained.  (Id.)  Plaintiff states that he believed this to be fraudulent conduct and "repeatedly made his objections to this fraud known to the Defendants, especially Defendant Azzara." (Id.)  Plaintiff also alleges that he objected to Defendant Azzara's proposal to cut the purchase of textbooks from the budget in order to pay for courtesy busing, which Plaintiff claims was "wrong, not ethical, not legal and completely contrary to the public policies of this State concerning education."  (Id. at 14.)

Next, to demonstrate a prima facie CEPA claim, a plaintiff must demonstrate that the employer took an adverse employment action and that this retaliatory action was causally connected to the whistle-blowing activity.  We will address these two elements together, as it appears that herein rests Defendants' main argument to dismiss Plaintiff's CEPA claims. Defendants argue that they took no action, and that the Board voted to not renew Plaintiff's employment without input or participation by Defendants.  Thus, according to Defendants, they cannot be held liable for their inaction.

CEPA defines an adverse employment or retaliatory action as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."  N.J.S.A. 34:19-2(e).  Contrary to Defendants' assertions (dkt. 20 at 10–11), the statute makes plain that discharge, suspension, or demotion are not required to prove a CEPA violation.  "[E]mployer actions that fall short

of [discharge, suspension, or demotion], may nonetheless be the equivalent of an adverse action." Nardello v. Twp. of Voorhees, 873 A.2d 577, 580 (N.J. Super. Ct. App. Div. 2005) (quotation omitted). An adverse action under CEPA may include "many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct." Green v. Jersey City Bd. of Educ., 828 A.2d 883, 891 (N.J. 2003).

We find that Plaintiff has sufficiently pleaded facts that could form a retaliatory action within the meaning of the statute. As stated, discharge, suspension, or demotion are not required to demonstrate a retaliatory action. See Nardello, 873 A.2d at 580. Plaintiff alleges that Defendants Azzara and Shafter excluded him "from any meaningful meetings or dialogue concerning the budget and the School District's finances," which otherwise would have been part of Plaintiff's responsibilities as Business Administrator. (Dkt. 1 at 13–14.) He claims that he was given the "silent treatment" and was "essentially isolated . . . out of a meaningful role with the Administrative team." (Id. at 16.) Although the 2015–16 school budget was more than eight million dollars over the cap, Plaintiff states that Defendant Azzara did not take input from him on the budget. (Id. at 14.) Plaintiff alleges that Defendant Shafter removed Plaintiff entirely from the budget development process. (Id. at 16.)

Plaintiff alleges that the Defendants excluded him from meetings and discussions that concerned the business administration of the district as a result of his raising concerns with Defendants. (Id. at 15–16, 19.) He claims that Defendants began to "undermine [his] contract and render him irrelevant and invisible," with the goal of forcing him from his job. (Id. at 16.) Plaintiff alleges that he was in good standing as an employee prior to making these

objections—that he had no disciplinary problems and no complaints about his work performance and that the school district discussed the possibility of granting him tenure early. (Id. at 5, 17, 18.)  He states that his contract was renewed twice, upon the recommendation of Superintendent Winters.  (Id. at 4.)  According to Plaintiff, his second reappointment initially failed before the Board of Education but Defendant Azzara overrode the Board's decision and renewed his contract.  (Id. at 17.)

Plaintiff alleges that Defendant Azzara grew hostile towards him after he objected to what he believed were unlawful budgetary practices.  (Id. at 18.)  He claims that his termination occurred within two months of his raising objections to Defendant Azzara's plan to cut textbook purchases from the budget to fund courtesy busing.  (Id. at 15.)  Plaintiff alleges that he was terminated and not reappointed to his position for a third time, despite the recommendation of Superintendent Winters, as a result of his objections.  (Id. at 9, 12, 15, 17.) He claims that Defendant Azzara did not let him complete his term of employment, and that Defendant Azzara instructed Superintendent Winters to inform Plaintiff to use his remaining sick leave and "not return to the office except to collect his belongings."  (Id. at 18–19.)

At the pleading stage, we conclude that Plaintiff has stated a plausible claim that Defendant Azzara and Defendant Shafter took retaliatory actions against Plaintiff, in violation of CEPA, for his objections to the continued use of courtesy busing, which he believed caused the budget to violate state law.  See Iqbal, 556 U.S. at 678.  As a result we reject Defendants Azzara's and Shafter's motion to dismiss Plaintiff's CEPA claims against them.

**II.     42 U.S.C. § 1983**

**A.     Parties' Arguments**

Defendants Azzara and Shafter argue that Plaintiff's First Amendment claim must be dismissed because he was speaking pursuant to his official duties as an employee, and not as a citizen. (Dkt. 11-3 at 8.)  Defendants compare Plaintiff's situation to the that of the plaintiff in Garcetti v. Ceballos, 547 U.S. 410 (2006), whose First Amendment claim was rejected by the Supreme Court because the speech at issue was part of the execution of his professional duties. (Dkt. 11-3 at 10–11.)  Defendants rely on post-Garcetti cases in the Third Circuit and in this district, which they contend demonstrate this principle. (Id. at 10–11.)  Defendant School Board joins in these arguments. (Dkt. 13-1 at 1, 6.)  Defendant School Board further relies on responsibilities listed as part of Plaintiff's job description to illustrate that he was speaking as part of his official duties. (Id. at 8–9.)

Defendant Shafter also argues that Plaintiff has failed to specifically make any allegation against him and thus cannot satisfy the Iqbal standard. (Dkt. 11-3 at 14.)  Defendants Azzara and Shafter argue that they took no action, and that they cannot be held liable under 42 U.S.C. § 1983 for the actions of the Defendant School Board that they neither participated in nor approved. (Id. at 15–16.)

Plaintiff argues that it would be premature to dismiss his Complaint at this point in the proceedings, and that he has met the pleading requirements. (Dkt. 16 at 9–10.)  Relying on Jackler v. Byrne, 658 F.3d 225 (2d Cir. 2011), Plaintiff argues that the First Amendment protects a refusal to obey an order to make statements that an individual believes are false, and such speech is not part of an employee's official duties. (Dkt. 16 at 14.)  He also argues that

13

Defendants had stripped away many of his official duties, and thus he was closer to a citizen at that point, rather than an employee.  (Id. at 13.)

In reply, Defendant Board of Education contends that there is no legal support for Plaintiff's position that removing duties from an employee renders that employee a citizen for First Amendment purposes.  (Dkt. 19 at 2–4.)

### B.    Analysis

We conclude that Plaintiff has sufficiently pleaded a claim under 42 U.S.C. § 1983 that Defendants School Board, Azzara, and Shafter deprived him of his First Amendment rights.  Therefore, the motions to dismiss (dkts. 11, 13) are denied as to Count Two.

A plaintiff may have a cause of action under Section 1983 for certain violations of constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

[42 U.S.C. § 1983.]

To state a claim for relief under Section 1983, a plaintiff must allege: (1) the violation of a right protected by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed or caused by a person acting under color of state law.  See Harvey v. Plains Twp. Police Dep't, 635 F.3d 606, 609 (3d Cir. 2011); see also West v. Atkins, 487 U.S. 42, 48 (1988).

"To establish a First Amendment retaliation claim, a public employee must show that (1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the speech had not occurred."  Dougherty v. Sch. Dist. of Philadelphia, 772 F.3d 979, 986 (3d Cir. 2014).

The Supreme Court has indicated that a public employee's speech is a balance of interests between the government as employer and the employee as a citizen.  "The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens.  So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively."  Garcetti v. Ceballos, 547 U.S. 410, 419 (2006). Beyond implicating the individual speaker's First Amendment rights, the Supreme Court has also "acknowledged the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion."  Id. at 419.  The Court's decisions thus seek "both to promote the individual and societal interests that are served when employees speak as citizens on matters of public concern and to respect the needs of government employers attempting to perform their important public functions."  Id. at 420.

Garcetti outlined three factors to determine whether a public employee's speech is protected by the First Amendment: (1) whether the employee spoke as a citizen; (2) whether the speech involved a matter of public concern; and (3) whether "the relevant government

entity had an adequate justification for treating the employee differently from any other member of the general public." See id. at 418; Flora v. County of Luzerne, 776 F.3d 169, 175 (3d Cir. 2015). After Garcetti, the Supreme Court looked again at the issue of public employee speech in Lane v. Franks, 134 S. Ct. 2369 (2014). In Lane, the Court held that the plaintiff's speech was as a citizen, and not as an employee, because it was "outside the scope of his ordinary job duties." Lane, 134 S. Ct. at 2378–79.[6]

The core issue in this matter is whether Plaintiff's speech was protected by the First Amendment. Specifically, the parties' dispute centers on whether Plaintiff was speaking in the scope of his ordinary job responsibilities as an employee of the Board of Education or as a citizen.

Whether speech is made as part of a plaintiff's job responsibilities or as a citizen is a mixed question of law and fact. Flora, 776 F.3d at 175. "Specifically, the scope and content of a plaintiff's job responsibilities is a question of fact, but the ultimate constitutional significance of those facts is a question of law." Id.

In Garcetti, the parties agreed that the plaintiff spoke pursuant to his employment duties. Garcetti, 547 U.S. at 424. The Court, however, left open a constitutional framework for situations where the extent of a public employee's official duties was in dispute by the parties, as it is here.

---

[6] Lane introduced the word "ordinary" as a modifier to job responsibilities and duties. The Third Circuit has speculated, without deciding, whether the inclusion of this modifier broadened the scope of First Amendment protection for employees by narrowing the class of unprotected speech. See Flora, 776 F.3d at 179 n.11; Dougherty, 772 F.3d at 990. The parties here do not raise any arguments with respect to whether Lane modified or merely applied Garcetti. We find that Plaintiff has stated a claim under either standard and we have no need to resolve that unanswered question.

> We thus have no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate. We reject, however, the suggestion that employers can restrict employees' rights by creating excessively broad job descriptions. The proper inquiry is a practical one. Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

[Id. at 424–25 (internal citations omitted).]

The Third Circuit also has "forgone any attempt to create a comprehensive framework for determining whether speech is made pursuant to an employee's official job duties." Flora, 776 F.3d at 177. Instead, the Third Circuit attempts to "'give[] contours to Garcetti's practical inquiry.'" Id. (quoting Dougherty, 772 F.3d at 988.)

"[T]he responsibility of a district court in evaluating whether a public employee's speech was made as a private citizen is to ask whether the speech at issue was 'outside the scope of his ordinary job responsibilities.'" Id. at 179 (quoting Lane, 134 S. Ct. at 2378). "[T]he 'controlling factor' is whether the statements were 'made pursuant to [the speaking employee's] duties,' that is, whether such utterances were among the things that the employee 'was employed to do.'" Id. at 177 (quoting Garcetti, 547 U.S. at 421). But "whether an employee's speech 'concern[s] the subject matter of [his] employment' is 'nondispositive' under Garcetti." Dougherty, 772 F.3d at 989 (quoting Garcetti, 547 U.S. at 421). The protected speech does not need to be made in public, it can be made within the workplace. Garcetti, 547 U.S. at 420–21.

17

Certainly, Plaintiff's speech was related to his job as Business Administrator.  But speech related to an employee's job duties may still be protected.  See Flora, 776 F.3d at 176–79 (rejecting district court's application of a "related to" standard).

Plaintiff alleges that he was directed to falsely certify a budget that he believed was illegal.  (Dkt. 1 at 13, 18.)  He claims that he "did not want to be a part of the fraudulent misrepresentations of the finances in the District."  (Id. at 18.)  An employee's refusal to make dishonest or fraudulent statements has been held to be within the scope of First Amendment protection.  See Jackler v. Byrne, 658 F.3d 225, 240 (2d Cir. 2011) (finding the plaintiff "had a strong First Amendment interest in refusing to make a report that was dishonest").  Further, having a responsibility to participate in a budget discussion by recommending financial policies and priorities is distinct from objecting that the budget itself is illegal.  See, e.g., Bradley v. W. Chester Univ. of the Pa. State Sys. of Higher Educ., No. 15-2681, 2017 U.S. Dist. LEXIS 30785, at *19 (E.D. Pa. Mar. 3, 2017) (finding that the plaintiff was speaking as a citizen, and not in her role as a Budget Director for the university, because "[t]here is a difference between recommending changes to improve or streamline an existing policy and upending the policy with accusations that it is in itself fraudulent").

Plaintiff also alleges, which we must accept as true, that he had no meaningful participation in the formulation of the 2015–16 budget.  (Dkt. 1 at 13–16.)  He argues that he was no longer responsible for participating in budget formulation at this time, and as a result, any discussion of the budget could not be part of his ordinary responsibilities.  He claims that he was "essentially excluded from his job and his position.  While he held the title of Business Administrator, he was actually phased out from the position, rendered irrelevant, and was

ignored." (Id. at 16.)  Plaintiff alleges that Defendant Azzara "never discussed any details or particulars of the budget" with him.  (Id. at 13.)  According to Plaintiff, his job responsibilities were changed and he was "given the silent treatment" and excluded from meetings regarding the budget and from providing input into budget formulation.  (Id. at 14–16.)  Defendants dispute that Plaintiff's scope of responsibilities was narrowed, and argue that he was still acting in accordance with his official duties.  (Dkt. 20 at 5–8.)

The scope of Plaintiff's official responsibilities, and whether he was still allowed and expected to perform those duties, is clearly contested between the parties.  We note that because of the factual nature of the scope of and content of a plaintiff's job duties, the Third Circuit has been cautious of district courts dismissing complaints at the pleading stage based on this factor.  See, e.g., Flora, 776 F.3d at 175-76 ("'[T]he question whether [a memorandum] was written as part of [the plaintiff's] official duties was a disputed issue of material fact that cannot be decided on a motion to dismiss pursuant to Rule 12(b)(6).'" (quoting Andrew v. Clark, 561 F.3d 261, 267 (4th Cir. 2009));  Hill v. Borough of Kutztown, 455 F.3d 225, 242–43 (3d Cir. 2006) (partially reinstating plaintiff's First Amendment claim because the complaint "should not have been dismissed at this stage of the proceeding").  In this way, this matter—at the motion to dismiss stage—is distinguishable from cases cited by Defendants, such as Myers v. County of Somerset, 515 F. Supp. 2d 492 (D.N.J. 2007) and Battle v. Bd. of Regents, 468 F.3d 755 (11th Cir. 2006), which involved proofs under a summary judgment standard.

Assuming the alleged facts in the Complaint are true, and construing them in the light most favorable to Plaintiff, we find that the Complaint pleads sufficient factual allegations that

can plausibly establish that Plaintiff's statements objecting to the Board of Education's budgetary practices were made as a citizen, and not pursuant to his ordinary job responsibilities.  See Iqbal, 556 U.S. at 678; Flora, 776 F.3d at 179.  We find that Plaintiff has stated a plausible claim that his speech was outside the scope of his official job responsibilities, in part, because his official duties were restricted.  Yet as the Third Circuit reminds us, "That such a dispute exists at this stage does not mean that one will, after discovery, remain for trial, and we do not imply that summary judgment will necessarily be inappropriate."  See Flora, 776 F.3d at 175 n.9.

To the extent that Defendants Azzara and Shafter also argue that they took no action against Plaintiff and thus cannot be held liable under Section 1983 (dkt. 11-3 at 14–16), we find that Plaintiff has sufficiently made allegations that, accepted as true, may demonstrate that Defendants affirmatively engaged in conduct that retaliated against him.[7]  Plaintiff alleges that Defendants Azzara and Shafter excluded him "from any meaningful meetings or dialogue concerning the budget and the School District's finances," which would have been part of Plaintiff's responsibilities as Business Administrator.  (Dkt. 1 at 13–16, 19.)  He claims that he was "essentially isolated . . . out of a meaningful role with the Administrative team" and given the "silent treatment."  (Id. at 16.)  Plaintiff alleges that Defendant Azzara and Shafter precluded him from providing input into the budget formulation process.  (Id. at 16.)  Taking

---

[7] Many of these allegations of retaliation for exercising a First Amendment right overlap with those that we previously discussed, supra I.B, with respect to Defendants' alleged retaliatory actions in the context of CEPA.

these allegations as true, we find that Plaintiff has sufficiently alleged affirmative actions by Defendants Azzara and Shafter.

Because Plaintiff has met his burden of stating a claim upon which relief may be granted, we deny Defendants Azzara's and Shafter's and Defendant Board of Education's motions to dismiss Plaintiff's Section 1983 claim alleging a deprivation of his First Amendment rights.

## CONCLUSION

For the reasons stated above, we deny Defendant Board of Education's partial motion to dismiss and deny Defendants Azzara's and Shafter's motion to dismiss.  We will enter an appropriate order.


                                                    s/ Mary L. Cooper
                                                    **MARY L. COOPER**
                                                    United States District Judge



**Dated:**  March 31, 2017